THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GERALD EDWARD LARRY, Defendant-Appellant.

Second District    No. 2—88—0441

Opinion filed April 11, 1990.

232

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Gerald Larry, was charged with attempted murder and entered a plea of guilty. The trial court sentenced him to a 20-year term of imprisonment. Defendant subsequently filed a petition for post-conviction relief, which the trial court denied following a hearing. On appeal, defendant maintains that the petition should have been granted because all four codefendants were represented by attorneys who worked for the Winnebago County public defender's office, thus creating a conflict of interest. We affirm.

The attempted-murder charge resulted from the shooting of Terry Gagliano on February 12, 1985. At about 5 p.m. Gagliano, who operated a pizza parlor, received a telephone call requesting the delivery of pizza and soft drinks to an apartment building in Rockford. Gagliano was admitted into the building by a young man who stated he had placed the order. He took Gagliano to a door off an interior hall and knocked on the door. When there was no response, he told another man who had just come down a flight of stairs to return upstairs and tell someone to come down and open the door. Gagliano then saw a third man go down the hall.

Gagliano became suspicious at this point. He handed the pizzas

and soft drinks to the man who had let him in the building and stated that he had forgotten something but would be right back. Gagliano then turned and began to walk away. He thought he saw defendant standing down the hallway. Gagliano was shot in the back. Although he was seriously injured, Gagliano was able to run away. The assailant fired a second shot, but it did not strike Gagliano.

Shortly after the shooting, the Rockford police arrested four youths: defendant, Jay Tomlinson, Darnell Leavy, and Antonio Craig. Craig was charged as a juvenile. All four youths gave statements to the police in which they admitted that the four planned to order pizza and then rob the person who made the delivery. Leavy implicated defendant as the shooter, while defendant stated Tomlinson was the shooter. Defendant stated that he and Craig were supposed to stab the delivery person. Tomlinson denied he was the shooter and stated he did not know who was. Craig also stated he did not know who the shooter was but he did not think it was defendant. The police were not able to establish who fired the shots, although they did establish that the weapon used was a .32 caliber pistol. Craig said in his statement that he saw Tomlinson early on the morning of the shooting and Tomlinson possessed a .32 caliber revolver at the time.

All four of the accused were represented by attorneys from the Winnebago County public defender's office. Defendant's attorney was Daniel King. Tomlinson was represented by Gary Pumilia, the head of the office. Leavy's attorney, Karen Sorenson, sought and received a substitution of judges, which effectively severed Leavy's case. King presented a motion to sever defendant's trial from Tomlinson's on the basis of the inconsistent statements made by the codefendants to the police. The trial court granted the motion on May 24, 1985.

On June 7, 1985, during a court appearance, defendant requested appointment of a new attorney, stating that he did not believe King was ready to go to trial because, while King had visited defendant a few times, he had not discussed the case or its progress. The trial court denied defendant's motion. Defendant entered an open plea of guilty on June 24, 1985.

In exchange for the plea, the State agreed that defendant's sentencing hearing could be continued to a date after Darnell Leavy's. Leavy had entered into a plea agreement under which the State agreed to recommend an eight-year sentence. The trial court imposed an eight-year term of imprisonment upon Leavy. King argued at defendant's sentencing hearing that defendant's sentence should be no greater than Leavy's.

King also argued that the evidence pointed to Tomlinson as the

shooter, relying primarily upon Antonio Craig's statement to the police. The prosecutor stated that it could not be determined who fired the shots. As a condition of the plea agreement, the State agreed that it would not argue defendant was the shooter. The State also agreed to allow defendant to present the testimony of Mary Martin, a social worker, that Detective Slaughter of the Rockford police department had told her he believed Tomlinson was the shooter. Martin testified to that effect at the sentencing hearing.

Defendant filed a motion asking the trial court to reconsider the 20-year sentence that was imposed. The trial court denied the motion. Defendant then filed a motion to vacate his guilty plea pursuant to Supreme Court Rule 604(d) (107 Ill. 2d R. 604(d)), which the trial court also denied. This court dismissed defendant's direct appeal for lack of jurisdiction because the Rule 604(d) motion was not timely filed. *People v. Larry* (1987), 153 Ill. App. 3d 1163 (unpublished order under Supreme Court Rule 23).

On June 12, 1987, defendant filed his petition for post-conviction relief, which alleged ineffective assistance of counsel due to King's failure to timely file the Rule 604(d) motion and that a conflict of interest existed because all four codefendants were represented by separate attorneys in the Winnebago County public defender's office. Daniel King testified that at the time he represented defendant, there were five or six felony attorneys in that office. Their offices were located in close proximity to one another. These attorneys shared the services of one secretary and two investigators. The attorneys relied upon an honor system to maintain the privacy of their pending case files, which were kept in their offices.

According to King, representation of multiple codefendants by the same public defender's office creates feelings of awkwardness, tension, and discomfort among the attorneys in the office. This is because the attorneys may each try to get a favorable deal for their client by offering their client's testimony against the others to the State. Additionally, the attorney may be forced to attack another lawyer's client, and it creates discomfort when that lawyer is working in the same office. King therefore felt that allowing lawyers from the same public defender's office to represent multiple codefendants can inhibit the aggressiveness of the attorneys on behalf of their clients. King stated that there was tension between him and Gary Pumilia regarding the instant case, although they were not at one another's throats. King did not file a motion to withdraw from the case because this would have been contrary to an office policy set by Pumilia.

King testified that he had some conversations with Pumilia regarding defendant's case, although neither attorney discussed specific matters which could have damaged their clients' cases. King stated that Pumilia had the power to fire him and that Pumilia would go to the county board to request raises for the attorneys in the office.

King was not sure if he offered the State defendant's testimony against the others in exchange for a favorable sentence. Regarding defendant's decision to enter an open plea of guilty, King stated that he presented the options to defendant, which included a negotiated plea of 14 years, and defendant decided to enter the open plea. With the exception of the late filing of defendant's Rule 604(d) motion, King felt he had done a decent job representing defendant. King was not sure if he would have handled the case any differently if the other defendants had not been represented by his colleagues in the public defender's office.

Defendant also testified at the hearing. Defendant stated that King never raised the possibility of having him testify against the other defendants in exchange for a favorable sentence. Defendant acknowledged it was his decision to reject the plea offer from the State of a 14-year sentence and to enter an open plea of guilty.

Gary Pumilia agreed with King that representation of multiple codefendants by the public defender's office creates feelings of tension and awkwardness within the office. Pumilia stated that defendant did not suffer as a result of the situation because King is a preeminent criminal defense attorney. According to Pumilia, King had about 20 years of experience handling criminal cases.

Although the trial judge expressed concern about his failure to warn defendant about the possible conflict in representation, he denied the petition for post-conviction relief. After defendant's motion for reconsideration was denied, he filed a timely notice of appeal.

■■ Criminal defendants enjoy a sixth amendment right to effective assistance of counsel which includes assistance by a lawyer whose allegiance to his or her client is not diluted by conflicting allegiances or inconsistent obligations. (*People v. Spreitzer* (1988), 123 Ill. 2d 1, 13-14.) Our supreme court has therefore considered cases in which defense counsel has a tie to a person or entity which would benefit from unfavorable verdicts with regard to defendant as *per se* conflicts of interest and has reversed convictions unless defendant was made aware of the conflict and knowingly waived the right to conflict-free counsel. (*Spreitzer*, 123 Ill. 2d at 16-17.) In such cases, there is no need to show the attorney's performance was adversely affected by the conflict. 123 Ill. 2d at 15.

■■ ■ Cases involving joint or multiple representation of codefendants are not considered *per se* conflicts of interest. (123 Ill. 2d at 17.) This includes cases such as the one at bar in which each codefendant is represented by a separate member of the same public defender's office. (See *People v. Nelson* (1980), 82 Ill. 2d 67, 72; *People v. Spicer* (1979), 79 Ill. 2d 173, 186; *People v. Robinson* (1979), 79 Ill. 2d 147, 169.) In situations involving joint or multiple representation, however, if counsel brings a potential conflict to the trial judge's attention at an early stage of the proceeding, the trial court has a duty to either appoint separate counsel or take adequate measures to determine whether the risk of conflict is too remote to warrant separate counsel. (*Holloway v. Arkansas* (1978), 435 U.S. 475, 484, 55 L. Ed. 2d 426, 434, 98 S. Ct. 1173, 1178; *Spreitzer*, 123 Ill. 2d at 18.) If the trial court fails to fulfill this duty, a conviction will be reversed without a showing that the attorney's performance was affected by the purported conflict in the absence of a knowing waiver by defendant of conflict-free counsel. 123 Ill. 2d at 18.

■■ If the trial court is not informed of the potential conflict, the conviction will only be reversed by a reviewing court if defendant shows an actual conflict of interest adversely affected counsel's performance. (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 350, 64 L. Ed. 2d 333, 348, 100 S. Ct. 1708, 1719; *Spreitzer*, 123 Ill. 2d at 18.) Hypothetical or speculative conflicts are not sufficient. (*People v. Robinson* (1979), 79 Ill. 2d 147, 169.) Defendant must point to some specific defect in counsel's strategy, tactics, or decision making attributable to the conflict in order to gain a reversal. (*Spreitzer*, 123 Ill. 2d at 18.) Defendant is not required to show, however, that the conflict contributed to his conviction. 123 Ill. 2d at 18-19.

■■ Although our supreme court held in *Nelson, Spicer,* and *Robinson* that representation of multiple codefendants by separate attorneys in the same public defender's office does not create a *per se* conflict of interest, none of those cases addressed the precise situation in the case at bar, where a codefendant is represented by the supervisor of defendant's attorney. We believe the Spreitzer case provides guidance in this area. In *Spreitzer*, defendant was represented by an assistant public defender. During the latter stages of the case, the person in charge of that public defender's office was a man who had participated in the prosecution of defendant during the early stages of the case. Although this placed defendant's attorney in a position where she might have to attack decisions which were made by her current boss when he was helping to prosecute the case, our supreme court ruled there was no *per se* conflict of interest. (*Spreitzer*,

123 Ill. 2d at 22.) Similarly, we believe there was no *per se* conflict here even though King could have been placed in the uncomfortable position of attacking his supervisor as well.

■ Since there was no *per se* conflict of interest and since the potential conflict was never brought to the trial court's attention by defendant, we must determine whether defendant made a showing that the purported conflict adversely affected Daniel King's performance. We conclude defendant failed to make such a showing.

According to defendant, King could have handled the case more aggressively were it not for the alleged conflict. Defendant suggests that King should have recommended going to trial and arguing at trial that Tomlinson was the shooter, while defendant withdrew from the crime.

King testified that he explained defendant's options to him and defendant decided to enter an open plea of guilty. Defendant testified that he made this decision himself. A reversal of defendant's conviction would only be justified if the alleged conflict caused King not to recommend going to trial because of his reluctance to attack Pumilia's client when he would have otherwise made such a recommendation.

The record clearly establishes this was not the case. When King entered into the plea agreement with the State which led to defendant's open plea, King made sure he would be able to assert Tomlinson was the shooter and that the State would not rebut this assertion with evidence showing defendant was the shooter. The State agreed to allow defendant to present Mary Martin's hearsay testimony that a Rockford police detective told her that he believed Tomlinson was the shooter. King vigorously argued at defendant's sentencing hearing that Tomlinson was the shooter, relying on Martin's testimony and the statement of Antonio Craig to the police. King also convinced the State to agree that defendant's sentencing hearing could be held after Darnell Leavy's, so he could argue that defendant's sentence should be no greater than Leavy's and that only Tomlinson should receive a greater sentence.

It is inconceivable that King's alleged reluctance to attack Pumilia's client could have caused him to forego recommending a trial when, in fact, King vigorously attacked Tomlinson at the sentencing hearing, even though such an attack could have harmed Tomlinson, who was subsequently sentenced by the same judge. The record shows that King zealously advocated his client's position, guarded his interests, and that the purported conflict did not diminish his zeal in any manner. Since defendant failed to show the alleged conflict af-

fected King's strategy, tactics, or decision-making, the trial court correctly denied the relief requested in the post-conviction petition.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

UNVERZAGT, P.J., and McLAREN, J., concur.