SALARIED EMPLOYEES OF NORTH AMERICA (SENA), Division of United Steelworkers of America, AFL-CIO, CLC, Petitioner-Appellant, v. THE ILLINOIS LOCAL LABOR RELATIONS BOARD *et al.*, Respondents-Appellees (American Federation of State, County, and Municipal Employees, Council 31, AFL-CIO, Intervenor-Appellant).

First District (4th Division)  Nos. 1—88—2761, 1—88—2764 cons.

Opinion filed August 30, 1990.—Rehearing denied October 2, 1990.

Jacobs, Burns, Sugarman & Orlove, of Chicago (Joseph M. Jacobs and Richard M. Stanton, of counsel), for petitioner.

Cornfield & Feldman, of Chicago (Jacob Pomeranz and Daniel I. Koen, of counsel), for intervenor.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Ann Plunkett-Sheldon, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Local Labor Relations Board.

Kelly R. Welsh, Corporation Counsel, of Chicago (Ruth M. Moscovitch and David A. Johnson, Assistant Corporation Counsel, of counsel), for respondent City of Chicago.

JUSTICE LINN delivered the opinion of the court:

Petitioner, Salaried Employees of North America, and intervenor, American Federation of State, County, and Municipal Employees (referred to jointly as the Unions), bring this appeal seeking reversal of a ruling made by the Illinois Local Labor Relations Board (the Board). In its decision, the Board held, *inter alia*, that all of the attorneys with the City of Chicago's Department of Law (the Law Department) were excluded from coverage of the Illinois Public Labor Relations Act (the Act) (Ill. Rev. Stat. 1989, ch. 47, par. 1601 *et seq.*). The Board determined that all of the Law Department attorneys were excluded because they were managerial employees under the Act and that certain Law Department attorneys were also excluded from the Act's coverage because they functioned as either confidential employees or supervisory employees.

The Unions now appeal, contending: (1) public policy does not require that the Law Department's attorneys be excluded from collective bargaining; (2) the Board's decision to exclude all Law Department attorneys is not supported by the Act, relevant case law or the

evidence; and (3) the Board's decision that certain Law Department attorneys were confidential employees and/or supervisory employees was improper.

For the reasons set forth below, we affirm the Board's decision.

BACKGROUND

There is no dispute as to the material facts. These facts were set forth in the written decision of the Labor Board's hearing officer after several months of testimony.

The Law Department is the legal arm of the City of Chicago and represents the city in all of its legal business. The Law Department attorneys provide guidance and litigation service to the mayor, the city council and all of the city's departments. The Law Department attorneys are responsible for drafting the city's rules and regulations and must be available at all times to give legal advice and assistance to the mayor, the city council and the other city departments.

As licensed attorneys, the Law Department attorneys are subject to, and bound by, the Illinois Code of Professional Responsibility. In addition, the Law Department attorneys are subject to the confidentiality requirements of the Department of Law Attorney's Manual issued by the City of Chicago.

All Law Department attorneys have access to all files and records maintained by the Law Department. No permission is required before an attorney may have access to a file. The only restricted files are the individual personnel files of each attorney.

All of the Law Department attorneys participate in the recruitment of new attorneys and while attorneys are sometimes hired for a specific division within the Law Department, attorneys are generally hired under the premise that they may work in several departments within the Law Department.

There are 16 divisions within the Law Department. Each division has a chief assistant and a deputy corporation counsel who are responsible for the smooth operation of the division. The divisions, however, are not completely separate and distinct. Attorneys often transfer from one division to another and are sometimes "loaned" from one division to another for special projects. In addition, the divisions each have separate responsibilities although there is a great deal of overlap in the day-to-day operation and function of the divisions.

The appeals division, for example, is responsible for the city's appellate practice. In 1987, the city was involved in excess of 120 appeals. Thirty-four percent (34%) of those appeals were labor related.

As a result of this appellate practice, recommendations and suggestions are sometimes made that result in a change in the city's policies and procedures.

The legal counseling division is primarily responsible for drafting ordinances, rules and regulations. It also acts as legal advisor to the other divisions of the Law Department and to the various city departments on the interpretation of various city ordinances, rules and regulations. Legal counseling attorneys are present on the floor of the city council during city council meetings to advise and assist the mayor and the aldermen regarding legal issues. The legal counseling division is also responsible for preparing city council agendas, and all ordinances introduced into the city council have been drafted by, or approved by, the attorneys in the legal counseling division.

The legal counseling division reports to the labor relations division on ordinances and actions relating to employees' terms and conditions of employment. In addition, legal counseling attorneys are involved in the city's budgetary process.

The labor relations division is responsible for collective bargaining negotiations and collective bargaining contract administration. The attorneys in this division also advise every city department on issues pertaining to the terms and conditions of employment. There is a great deal of interaction between this division and the other attorneys in the Law Department. Attorneys from other divisions are often called to assist the labor relations division on specific projects, cases or issues. The labor relations attorneys and the attorneys from the labor and personnel division interact on many issues relating to the terms and conditions of employment.

The labor and personnel division is responsible for all non-union-related employment litigation involving the city. All of the cases handled by this division involve employees of the city. The attorneys of this division are also responsible for drafting personnel rules and ordinances. A major distinction between this division and the labor relations division is that the labor relations division is responsible for the traditional union-management labor relations functions such as collective bargaining, grievances, arbitrations, and unfair labor practice charges. Attorneys in the labor and personnel division are responsible for all other labor matters. If an attorney from another division comes across an issue involving labor-related issues, that attorney first contacts the labor and personnel division for advice and assistance.

The revenue division is responsible for collecting the city's money. As with the attorneys in the other divisions, attorneys in the

revenue division interact with attorneys for the other divisions on many different issues. Attorneys from this division are often assigned to other divisions to provide short-term assistance, and attorneys from other divisions are sometimes assigned to the revenue division to provide assistance.

The affirmative litigation division handles all of the city's complicated plaintiff litigation including anti-trust, civil rights and public employee fraud. These cases are complex and sensitive. The work performed by these attorneys has affected the city's budget. The issues that this division has handled include employee wages, hours, and terms and conditions of employment. In addition, these attorneys have been involved in pension issues.

The general litigation division handles the defense of all of the city's cases except those involving personal injury. As is true with other divisions in the Law Department, general litigation attorneys have contact and work with the attorneys from other divisions. The attorneys from this division often work with attorneys from the legal counseling division, the labor relations division and the appeals division. General litigation attorneys sometimes make suggestions and recommendations regarding changes in contract language use in the city's labor contracts.

The public utilities division is primarily responsible for all matters relating to public utilities affecting the city and its citizens. This division works closely with the City's Planning Department. They often testify at public hearings regarding public utility issues. They work closely with the mayor and his or her staff regarding public utility law and procedures.

The municipal prosecutions division enforces all of the city's ordinances and acts in an advisory capacity to the city's operating departments. The attorneys of this division recommend changes in the city's licensing procedures and policies. On an "as-needed" basis, the attorneys from this division will assist attorneys from other divisions and the attorneys from other divisions will assist the municipal prosecutions division.

The building and housing division enforces the city's building code, fire ordinances and zoning regulations. The attorneys from this division often work jointly or in consultation with the attorneys from the other divisions.

The traffic enforcement division enforces the city's traffic laws. In addition, the attorneys from this division have assisted in the formulation of various city policies involving such matters as handicapped parking, the administrative adjudication process for traffic vi-

olations and certain issues relating to Wrigleyville parking.

The torts division, as the title suggests, handles all of the personal injury claims brought against the city. On occasion, as the work demands, attorneys from the torts division have performed duties for other Law Department divisions including the labor relations division. Also, torts division attorneys have worked jointly or in consultation with the labor and personnel division.

The finance and economic development division provides legal advice to the city for its financial and commercial business affairs. This division is responsible for reviewing all commercial and personal service contracts. This division has been involved with formulating the city's regulations concerning minority set-aside programs and the Woman's Business Enterprise Program. It also works to carry out the mayor's executive orders in these areas. Like the attorneys in the other divisions, attorneys in this division assist, consult and work jointly with attorneys from other divisions.

The real estate and land use division provides legal assistance to the city for its development and execution of major real estate development enterprises. The attorneys in this division provide assistance to the Zoning Board of Appeals, the Chicago Planning Commission, the Commercial District Development Commission, the Chicago Commission on Historical Landmarks, and the city council's zoning commission. These attorneys also draft and interpret the rules and regulations for these boards and commissions. As with other divisions, attorneys from the real estate division may be assigned to work on matters from other divisions on an as-needed basis.

The legal investigations division is responsible for making on-the-scene accident investigations and witness interviews. The attorneys from this division also take photographs and make sketches. This division works closely with the other divisions on all litigation issues. In addition, this division performs investigations for the labor and personnel divisions.

All of the evidence set forth above was presented to the hearing officer. Thereafter, the hearing officer issued a written decision in which the hearing officer held that the attorneys of the Law Department are "public employees" within the purview of the Act and that they are entitled to form collective bargaining units. However, as part of her decision, the hearing officer accepted the stipulations entered into by the parties.

The parties stipulated that the following attorneys were excluded from coverage by the Act because they were either managerial, confidential or supervisory employees as defined by the Act; corporation

counsel, deputy corporation counsel, first assistant corporation counsel, office administrator and director of legal investigations.

In addition, the parties agreed that the following attorneys were confidential employees and excluded by the Act: All attorneys within the labor relations division, administrative assistant to the corporation counsel and the administrative assistant to the deputy corporation counsel. Also, the following employees were stipulated as being managerial employees: chief assistant corporation counsel, assistant director of legal investigations and law librarian.

The Board subsequently reviewed the hearing officer's decision and recommendations. The Board accepted the hearing officer's findings of fact but rejected several of the hearing officer's conclusions of law. Significantly, the Board ruled that because of their roles as attorneys, their relationship to the city, and the unique makeup of the Law Department, all of the Law Department attorneys fell within the Act's definition of "managerial employee." Consequently, all of the Law Department attorneys were excluded from collective bargaining. The Board also ruled that certain Law Department attorneys functioned as either "confidential employees" or "supervisory employees" as defined by the Act and were thus also excluded on those bases.

The Unions took exception to the Board's ruling and brought this appeal.

OPINION

■ In an appeal from an agency such as the Board, the function of the reviewing court is to determine whether the agency's findings are against the manifest weight of the evidence. (*Board of Education of Plainfield Community Consolidated School District No. 202 v. Illinois Educational Labor Relations Board* (1986), 143 Ill. App. 3d 898, 493 N.E.2d 1130.) A court may not substitute its judgment for the agency's judgment. (*Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 365 N.E.2d 322.) Although a reviewing court is not bound by an agency's interpretation of the law, where administration of a broad statutory standard has been delegated to an agency's discretion, the court should rely upon the agency's interpretation where there is reasonable debate as to the statute's meaning. *Plainfield,* 143 Ill. App. 3d at 907, 493 N.E.2d at 1136; *NLRB v. Hendricks County Rural Electric Membership Corp.* (1981), 454 U.S. 170, 70 L. Ed. 2d 323, 102 S. Ct. 216; *Bruns v. Department of Registration & Education* (1978), 59 Ill. App. 3d 872, 376 N.E.2d 82.

■ In addition, courts give substantial weight and deference to

the interpretation of a statute by the agency charged with the administration and enforcement of that statute. (*Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 447 N.E.2d 295.) A significant reason for this deference is that courts appreciate that agencies such as the Board can make informed judgments based upon their experience and expertise. (*Illinois Consolidated Telephone*, 95 Ill. 2d at 153, 447 N.E.2d at 300.) Interpretations by administrative agencies express an informed source for ascertaining legislative intent. *Illinois Consolidated Telephone*, 95 Ill. 2d at 153, 447 N.E.2d at 300; *Adams v. Jewel Cos.* (1976), 63 Ill. 2d 336, 348 N.E.2d 161.

■ Where a determination involves a mixed question of law and fact, the Board's resolution of such questions is to be upheld if reasonable, consistent with the Act, and based on findings supported by substantial evidence. *Rockford Township Highway Department v. Illinois State Labor Relations Board* (1987), 153 Ill. App. 3d 863, 506 N.E.2d 390.

The theory underlying these principles is that "the officers charged with the duty of carrying new laws into effect are presumed to have familiarized themselves with all the considerations pertinent to the meaning and purpose of the new law, and to have formed an independent, conscientious, and competent expert opinion thereon." *Illinois Consolidated Telephone*, 95 Ill. 2d at 154, 447 N.E.2d at 301.

The resolution of the case at bar involves a determination of the scope and meaning of section 3(j) of the Act. That provision defines a "managerial employee" as being:

"[A]n individual who is engaged predominantly in executive and management functions and is charged with the responsibility of directing the effectuation of such management policies and practices." Ill. Rev. Stat. 1989, ch. 48, par. 1603(j).

The Act does not define what constitutes "executive and management functions." In addition, a review of relevant case law reveals that there is no hard and fast rule regarding what duties and responsibilities qualify an employee as a "managerial employee." However, the judicial decisions construing the Act and the NLRA do provide some general guidelines.

■ Managerial employees are those involved in the direction of the governmental enterprise or a major unit thereof who possesses authority to broadly affect its mission or fundamental methods. (*General Service Employees Union, Local 73, AFL-CIO*, 2 Pub. Employees Rep. (Ill.) par. 3020, case No. L—RC—86—10 (LLRB Aug. 26, 1986).) However, an employee need not participate actively in the

formulation or effectuation of management's labor relations policies in order to be deemed "managerial." (*Board of Regents of the Regency Universities System v. Illinois Educational Labor Relations Board* (1988), 166 Ill. App. 3d 730, 520 N.E.2d 1150.) In addition, managerial status is not limited to those at the very highest level of the governmental entity, for it is enough if the functions performed by the employee sufficiently align him with management such that the employees "should not be in a position requiring them to divide their loyalty to the administration *** with their loyalty to an exclusive collective-bargaining representative." *Board of Regents*, 166 Ill. App. 3d at 742-43, 520 N.E.2d at 1158.

Turning to the facts of the case at bar, we are compelled to affirm the Board's decision. We believe that the record fully supports the Board's conclusion that all of the attorneys employed by the Law Department constitute managerial employees and are therefore excluded from the Act's coverage.

To begin, there are no reported judicial or administrative decisions dealing with the collective bargaining rights of attorneys employed by large municipalities. The two decisions that involve facts most analogous to the case at bar are the Supreme Court's decision in *NLRB v. Yeshiva University* (1980), 444 U.S. 672, 63 L. Ed. 2d 115, 100 S. Ct. 856, and our recent decision in *Board of Regents*.

In *Board of Regents*, this court ruled that the center directors for certain universities constituted managerial employees within the meaning of the Act. The center directors were responsible for the day-to-day functioning of the centers. The directors were involved in hiring personnel, possessed the responsibility to insure that projects were carried out, and were able to change the focus of a center. We held, based on these facts, that the center directors were managerial employees as a matter of law. *Board of Regents*, 166 Ill. App. 3d at 743, 520 N.E.2d at 1159.

In rendering that decision, we emphasized that the managerial exclusion is not limited to "very high positions." (166 Ill. App. 3d at 742, 520 N.E.2d at 1158.) Instead, we held that the key inquiry is whether the duties and responsibilities of the employees in question are such that the employees should not be placed in a position requiring them to divide their loyalty between the employer and the collective bargaining unit. 166 Ill. App. 3d at 743, 520 N.E.2d at 1158.

Likewise, in *Yeshiva*, the Supreme Court held that the key concern underlying the managerial exclusion (in NLRB cases) is "[t]hat an employer is entitled to the undivided loyalty of its representatives." (*Yeshiva*, 444 U.S. at 682, 63 L. Ed. 2d at 125, 100 S. Ct. at

862.) *Yeshiva* involved the issue of whether an entire college faculty could be considered within the NLRB's managerial exclusion. According to the Supreme Court, the goal in applying the managerial exclusion is to ensure that employees who exercise discretionary authority on behalf of the employer will not divide their loyalty between the employer and the union. Where the professional interests of the employee cannot be separated from those of the employer, the employees can be properly considered as "managerial employees." (444 U.S. at 688, 63 L. Ed. 2d at 129, 100 S. Ct. at 865.) Based on these facts, the *Yeshiva* Court held that all of the faculty members could be considered managerial employees.

■■ In the case at bar, we believe, based on the record before it, that the Board could certainly rule that all of the Law Department attorneys fell within the managerial exclusion set forth in the Act.

First, the organization of the Law Department does not square with the traditional authority structures contemplated by the Act. The record is replete with continuous references to the collegial nature of the Law Department. Although divisions exist, it is clear that all of the attorneys work in multiple areas and that the demands of the client (*i.e.*, the City of Chicago) are such that an attorney may be assigned to the torts division on one day and the labor and personnel division the next. The makeup of the Law Department inescapably leads to the conclusion that the Law Department necessarily functions as a single cohesive unit in which tasks are assigned in a team fashion without any concern for, or recognition of, a formal management/union division between attorneys.

That being the case, it is impossible to determine how the Law Department could efficiently operate if it was to be divided into union/nonunion attorneys. The Board's decision that certain attorneys were, in addition to being managerial, also confidential and/or supervisory employees demonstrates the multifaceted roles performed by the individual Law Department attorneys. This fact is further borne out by the stipulations of the parties. The parties stipulated that whole divisions (*i.e.*, labor relations division) of the Law Department were excluded from collective bargaining by the Act. Yet, the facts are clear that attorneys from other divisions regularly provide assistance to, and consult with, the attorneys in that excluded division. To permanently divide the Law Department (into union and nonunion sectors) would necessarily lessen the effectiveness of the Law Department's attorneys and would undermine the duties that they owe to their single and sole client, the City of Chicago.

Second, all of the Law Department attorneys have the authority

to recommend changes in the manner in which the city operates. Indeed, the record reveals that the city depends on the recommendations from the Law Department attorneys to function on a day-to-day basis. The Law Department attorneys review all legislation voted upon by the city council, assist alderman and city departments on rules and regulations, draft personnel ordinances for city employees, carry out the mayor's executive orders regarding hiring quotas, takes measures to increase revenues for the city budget, recommend changes in the city's labor contracts with outside unions, alter the city's licensing policies and practices, and review and modify all of the personal service contracts executed by the city.

Put simply, the Law Department attorneys constitute an inherent part of the city and cannot be permitted to be placed in a position "requiring them to divide their loyalty" to the city "with their loyalty to an exclusive collective-bargaining representative." (*Board of Regents*, 166 Ill. App. 3d at 743, 520 N.E.2d at 1158.) There is simply no reasonable means of separating the Law Department attorneys from the City of Chicago without destroying their ability to perform the necessary and important functions delegated to them.

Third, the Law Department attorneys exercise a tremendous amount of discretion on behalf of the city and we do not believe the city should be forced to bear the divided loyalty that often follows unionization. (Accord, *Yeshiva*, 444 U.S. at 682, 63 L. Ed. 2d at 125, 100 S. Ct. at 862.) This is especially so where, as here, the interests of the employees are identical to, and cannot be separated from, those of the employer. *Yeshiva*, 444 U.S. at 688, 63 L. Ed. 2d at 129, 100 S. Ct. at 865.

We must emphasize, however, that the facts of this case are most unique. The Law Department functions similarly to the university in *Yeshiva*; although there are senior members (*i.e.*, supervisors), all of the attorneys exercise managerial discretion on behalf of the city. All of the attorneys are involved in hiring, have access to all files, and may be assigned to labor-related matters. The authority structure within the Law Department is diffused rather than rigid. And, all of the attorneys may, at any time, be assigned to work closely with the mayor or his advisors on special projects vitally important to the interests of the city.

In sum, the unique organization and division of responsibilities within the Law Department cleary support the Board's determination that all of the Law Department attorneys constitute managerial employees within the meaning of the Act. Accordingly, we affirm the Board's decision.

In light of our decision, we need not address the other issues raised by the parties as our resolution of the managerial employee issue is determinative of this appeal.

For the foregoing reasons, the Board's decision is affirmed.

Affirmed.

McMORROW, P.J., and JIGANTI, J., concur.