CHIEF JUDGE OF THE CIRCUIT COURT OF COOK COUNTY, Petitioner-Appellant, v. AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, COUNCIL 31, AFL-CIO, *et al.*, Respondents-Appellees.

First District (4th Division)   No. 1—90—3692

Opinion filed May 14, 1992.

Office of the Public Guardian (Patrick T. Murphy and Lee Ann Lowder, of counsel), and Office of the Chief Judge (Margaret Kostopulos, of counsel), both of Chicago, for petitioner.

Roland W. Burris, Attorney General, of Springfield (Ann Plunkett-Sheldon, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois State Labor Relations Board.

Cornfield & Feldman, of Chicago (Stephen A. Yokich, of counsel), for other respondent.

JUSTICE LINN delivered the opinion of the court:

The American Federation of State, County and Municipal Employees, Council 31, AFL-CIO (the union), petitioned the Illinois State Labor Relations Board (the Board) for certification as the collective bargaining representative of certain employees of the office of the Cook County public guardian. The union sought certification of a bargaining unit composed of professional and nonprofessional employees. The unit would also include attorneys who worked in the office.

Following an administrative hearing, a hearing officer issued a recommended decision. The hearing officer found that the proposed bargaining unit, with some modification, was appropriate and directed an election within the unit for representation. On review, the Board modified and adopted the recommended decision of the hearing officer and upheld his direction of election. An election was held and the union prevailed. The Board certified the union as the exclusive bargaining agent for the unit.

The chief judge of the circuit court of Cook County, through the Cook County public guardian, Patrick Murphy, seeks a partial reversal of the Board's order. The public guardian assigns error to the Board's reasoning and result.

We affirm the order of the Board in part and reverse in part.

BACKGROUND

## A

The record contains the following pertinent facts. Pursuant to statute, the office of the Cook County public guardian is a county office under the authority of the chief judge of the circuit court of Cook County. The chief judge appoints the public guardian, who holds the office "at the pleasure of the chief judge." (Ill. Rev. Stat. 1989, ch. 110½, par. 13—1.1.) The parties stipulated that the chief judge was the employer.

The trial court appoints Murphy to represent persons who are adjudged to be incompetent because of either age or physical or mental disability. A trial court appoints Murphy in a case individually rather than the public guardian's office in general. However, because of the large volume of cases in which Murphy is appointed, Murphy delegates over 90% of the decision making in the case to the attorneys working under him. Murphy testified that his attorneys "have almost unfettered discretion on site to make decisions." Indeed, "nine times out of ten," Murphy does not even know what decisions his attorneys make with respect to their cases.

The public guardian's office has three separate divisions: guardianship, juvenile, and divorce. The office employs approximately 55 attorneys designated guardians *ad litem* (GAL), in addition to numerous social workers and support personnel. The GALs are ranked according to their responsibilities, ranging from GAL I through GAL IV.

In the guardianship division, Murphy is appointed guardian to represent legally incompetent persons, most of whom are elderly, or those person's estates. In most cases, Murphy serves as guardian of both the ward and the ward's estate. Murphy is responsible for making not only litigation decisions on behalf of his wards, but also "life" decisions as well. The hearing officer found that "Murphy is responsible for deciding how disabled people spend their money and where they live, selecting responsible people to care for them, and maintaining or disposing of their real and personal property."

Murphy delegates almost all decision-making responsibilities to members of his staff because the case load, approximately 21,400 wards and clients, is too high for him to handle by himself. However, Murphy retains a fiduciary responsibility to all of the wards and he is accountable for every decision made in the office. Murphy has the authority to override the decisions of his staff members.

The guardianship division includes 6 GALs, 15 social workers, and several bookkeepers and housekeepers. The hearing officer found as follows:

"Once Murphy delegates a case in the Guardianship division to a lawyer, that lawyer represents Patrick Murphy, the court appointed guardian of the disabled ward. The lawyers are responsible for and are expected to make decisions based on what they believe Murphy would do in any particular situation. Although the attorneys in the Guardianship division are required by law to adhere to certain procedures in Probate Court, they are granted under Illinois and common law, broad discretion in making litigation decisions on behalf of their clients.

Murphy attends meetings with his attorneys on a regular basis. Although Murphy does not direct the attorneys on how to manage their cases, he does encourage them to speak with him if they have any questions. The lawyers generally make more than 98 percent of all decisions on their own without any input from Murphy. However, in a very close case, because Murphy is the 'client', the lawyers will speak with Murphy about how to handle the case. Typically, lawyers will approach Murphy with questions between ten and 25 times each week. Overall, the lawyers make hundreds of thousands of decisions a year independent of Murphy. There are very few formal meetings between Murphy and the Guardianship lawyers."

In the juvenile division, Murphy represents juveniles in child abuse and neglect matters in addition to delinquency cases. The trial court appoints Murphy to serve as a juvenile's guardian *ad litem* and attorney. In addition to making litigation decisions, Murphy is responsible for determining where the juvenile lives.

As with the guardianship division, Murphy delegates 98% of all decision-making authority to GALs in the juvenile division. The division includes 41 GALs, 15 social workers, and 10 support staff. Of the 41 GALs, 7 are ranked GAL II and serve as lead attorneys. One lead attorney is assigned with three to five GALs with the rating of GAL I to each of the courtrooms that hear juvenile matters. The GALs are responsible for executing Murphy's decisions. The hearing officer found that "Murphy is the 'client', and the juvenile is not."

The divorce division represents children in contested divorce cases involving the custody of those children. The trial court appoints Murphy to serve as both guardian *ad litem* and attorney for the child.

As in the other divisions, Murphy delegates many of his duties to the GALs in the division. The division includes seven GALs. The

GALs meet with themselves approximately four times weekly; they rarely ask Murphy questions regarding their cases.

## B

The union petitioned the Board for certification as a collective bargaining representative. (See Ill. Rev. Stat. 1989, ch. 48, par. 1609(a)(1).) The union sought certification of a bargaining unit composed of GALs, caseworkers, investigators, clerks, typists, administrative assistants, accountants, stenographers, and bookkeepers, excluding all managerial, supervisory, and confidential employees as defined by the Illinois Public Labor Relations Act (the Act) (Ill. Rev. Stat. 1989, ch. 48, par. 1601 *et seq.*).

Following an administrative hearing, a hearing officer found the above-stated facts. The parties further stipulated that GALs were professional employees within the meaning of the Act. (See Ill. Rev. Stat. 1989, ch. 48, par. 1603(m).) Among his conclusions of law, the hearing officer concluded that the GALs were not managerial employees within the meaning of section 3(j) of the Act. (Ill. Rev. Stat. 1989, ch. 48, par. 1603(j).) The hearing officer also concluded that the GALs with the rating of GAL II in the juvenile division were not supervisors within the meaning of the Act. (See Ill. Rev. Stat. 1989, ch. 48, par. 1603(r).) Consequently, the hearing officer recommended that the GALs not be excluded from the proposed bargaining unit.

The hearing officer also recommended the formation of two voting groups, one composed of professional employees and another composed of nonprofessional employees. The employees in the two groups would vote on whether they wished to be represented in one combined unit of professional and nonprofessional employees. The hearing officer further recommended that the GALs should form a separate unit.

On review, the Board modified the hearing officer's recommended decision and upheld his direction of election. The Board agreed with the hearing officer that the GALs were not managerial employees within the meaning of the Act. However, the Board concluded that the GALs should be included with the professional employees in the unit.

The Board then conducted a representation election within the proposed unit's two voting groups. The majority of employees voted in favor of the union, and also voted in favor of one combined unit of professional and nonprofessional employees. The Board thereafter certified the union as the exclusive bargaining agent for the unit. The chief judge appeals.

Opinion

I

Judicial review of a final order of the Board is taken directly to the appellate court and such review is in accordance with the Administrative Review Law. (Ill. Rev. Stat. 1989, ch. 48, par. 1611(e); ch. 110, par. 3—101 *et seq.*) The Administrative Review Law limits our review to the record before us; we may not hear new or additional evidence. The statute additionally mandates that the "findings and conclusions of the administrative agency on questions of fact shall be *prima facie* true and correct." Ill. Rev. Stat. 1989, ch. 110, par. 3—110.

■■ Courts have construed these statutory provisions to mean that, on administrative review, it is not a court's function to weigh evidence. Rather, the court's function is to ascertain whether the findings and decision of the agency are against the manifest weight of the evidence. An administrative agency decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. (*Village of Wheeling v. Illinois State Labor Relations Board* (1988), 170 Ill. App. 3d 934, 940, 524 N.E.2d 958, 962, *aff'd sub nom. City of Freeport v. Illinois State Labor Relations Board* (1990), 135 Ill. 2d 499, 554 N.E.2d 155.) Courts will accord deference to an interpretation of a statute by the agency charged with its administration. However, the agency's interpretation is not binding and will be rejected when erroneous. (*City of Freeport v. Illinois State Labor Relations Board* (1988), 169 Ill. App. 3d 151, 154, 523 N.E.2d 214, 216, *aff'd* (1990), 135 Ill. 2d 499, 554 N.E.2d 155.) Also, Federal cases that construe the National Labor Relations Act (29 U.S.C. §151 *et seq.* (1988)) are persuasive authority for similar provisions in the State Act. *American Federation of State, County & Municipal Employees v. Illinois State Labor Relations Board* (1989), 190 Ill. App. 3d 259, 264, 546 N.E.2d 687, 690-91.

II

The chief judge seeks a partial reversal of the Board's order. Murphy argues alternatively: (1) all of the GALs should be excluded from the bargaining unit because they are managerial employees; (2) the GALs with the rating of GAL II should be excluded from the bargaining unit because they are supervisory employees; and (3) the GALs should form a separate bargaining unit. We need address only the first argument.

A

■ The Act excludes managerial employees from collective bargaining. (Ill. Rev. Stat. 1989, ch. 48, par. 1603(m).) The Act defines a managerial employee as "an individual who is engaged predominantly in executive and management functions and is charged with the responsibility of directing the effectuation of such management policies and practices." (Ill. Rev. Stat. 1989, ch. 48, par. 1603(j).) Construing this provision, we have held that managerial employees "are those involved in the direction of the governmental enterprise or a major unit thereof who possess authority to broadly affect its mission or fundamental methods." *Salaried Employees of North America v. Illinois Local Labor Relations Board* (1990), 202 Ill. App. 3d 1013, 1020, 560 N.E.2d 926, 932.

■ Authorities agree that decision-making authority is a key requirement of a managerial employee. The United States Supreme Court described this requirement as follows:

"Managerial employees must exercise discretion within, or even independently of, established employer policy and must be aligned with management. *** [A]n employee may be excluded as managerial only if he represents management interests by taking or recommending discretionary actions that effectively control or implement employer policy." *National Labor Relations Board v. Yeshiva University* (1980), 444 U.S. 672, 683, 63 L. Ed. 2d 115, 126, 100 S. Ct. 856, 862.

■ Focusing on professional employees, the Board has held as follows:

"[A] professional employee is a managerial employee only when he exercises something more than 'the mere exercise of professional discretion and judgment' and if he actually formulates and effectuates 'management policies by expressing and making operative decisions of the Employer.' [Citations.]" (*Department of Central Management Services*, 1 Pub. Employee Rep. (Ill.) par. 2014, at VIII-84, Nos. S—UC—6, S—UC—8 (ISLRB, July 17, 1985).)

In other words, where the professional interests of the employee cannot be separated from those of the employer, the employee is deemed a managerial employee. *Salaried Employees*, 202 Ill. App. 3d at 1022, 560 N.E.2d at 932.

■ However, "an employee need not participate actively in the formulation or effectuation of management's labor relations policies in order to be deemed 'managerial.'" (*Salaried Employees*, 202 Ill. App.

3d at 1020-21, 560 N.E.2d at 932.) Also, managerial status is not limited to those at the very highest levels of the governmental entity. Rather, "the key inquiry is whether the duties and responsibilities of the employees in question are such that the employees should not be placed in a position requiring them to divide their loyalty between the employer and the collective bargaining unit." *Salaried Employees*, 202 Ill. App. 3d at 1021, 560 N.E.2d at 932.

## B

■ Applying these principles to the case at bar, we conclude that the GALs are managerial employees within the meaning of the Act. We previously recounted at length the hearing officer's findings of fact regarding the responsibilities of the GALs. We need not repeat those findings here. Even a cursory review of those findings plainly shows that the GALs are involved in the direction of the Cook County public guardian's office and possess authority to broadly affect its mission or fundamental methods. *Salaried Employees*, 202 Ill. App. 3d at 1020, 560 N.E.2d at 932.

Both the hearing officer and the Board ignored their own findings of fact and the controlling legal principles to reach their conclusions. The hearing officer conceded that the GALs exercise "a wide degree of discretionary authority" in handling the cases. However, the hearing officer nevertheless concluded as follows:

> "[The GALs'] discretion is based on the exercise of their professional judgment as a lawyer [*sic*] which does not satisfy the requirement of being engaged in an executive and management function. *** Moreover, to the extent that the GALs do develop policy, they are expected to handle their cases in accordance with what Murphy himself would do in a given situation."

The hearing officer's conclusion was against the manifest weight of the evidence. The hearing officer found that the GALs represent Murphy. The hearing officer also found that the GALs received decision-making authority from Murphy because Murphy's large case load prevented him from personally making those decisions in each case. These findings plainly show that a GAL actually formulates and effectuates management policies by expressing and making operative Murphy's decisions. See *Department of Central Management Services*, 1 Pub. Employee Rep. (Ill.) par. 2014 at 84.

The Board attempted to distinguish this case from our decision in *Salaried Employees* in three respects. This attempt fails. First, the Board noted that in *Salaried Employees*, the city law department attorneys "were counsel to their employer, the City of Chicago." The

Board attempted to distinguish this case from *Salaried Employees* as follows:

"Here, in contrast, the GALs represent not their employer, the Chief Judge, or even the head of their office, the Public Guardian, Patrick Murphy, but the thousand of individual wards of the court whose interests the Public Guardian's Office has been designated to protect. The GALs have a fiduciary duty to the wards and it is primarily on their behalf that the GALs exercise discretionary judgment in their capacity as attorneys.

This reasoning and conclusion was against the manifest weight of the evidence. As the Board conceded in a footnote in its decision, the hearing officer found that a case is assigned to Murphy as an individual rather than the public guardian's office in general. Consequently, as the Board noted in the same footnote, "Murphy himself owes a fiduciary duty to the wards of the court and relies on the GALs to carry out this duty on his behalf." Further, it is uncontested that the GALs exercise a large amount of discretionary authority in carrying out Murphy's fiduciary duty. Since the GALs exercise discretionary authority that effectively controls or implements Murphy's fiduciary duty to his wards, then the GALs are properly deemed to be managerial employees. See *Yeshiva*, 444 U.S. at 683, 63 L. Ed. 2d at 126, 100 S. Ct. at 862.

Second, the Board noted that in *Salaried Employees*, the city law department attorneys "possessed significant authority with respect to the city's daily operations." The Board attempted to distinguish this case from *Salaried Employees* by noting that the GALs do not perform any administrative duties in the office, or "establish or even recommend changes in Office operating policies and procedures in the course of their normal duties." However, this is not a crucial factor in determining managerial status. Rather, the key inquiry is simply whether the duties and responsibilities of the GALs are such that the GALs should not be placed in a position requiring them to divide their loyalty between Murphy and the union. See *Salaried Employees*, 202 Ill. App. 3d at 1021, 560 N.E.2d at 932.

Third, the Board noted that in *Salaried Employees*, the city law department attorneys were involved in labor relations and personnel matters. The Board further noted that, in contrast, the GALs did not exercise *any* such responsibility. However, "an employee need *not* participate actively in the formulation or effectuation of management's labor relations policies in order to be deemed 'managerial.'" *Salaried Employees*, 202 Ill. App. 3d at 1020-21, 560 N.E.2d at 932.

In sum, the record shows that the professional interests of the GALs cannot be separated from those of Murphy. (See *Salaried Employees*, 202 Ill. App. 3d at 1022, 560 N.E.2d at 932.) Therefore, we hold that the GALs in the Cook County public guardian's office are managerial employees within the meaning of the Illinois Public Labor Relations Act. Consequently, the GALs should be excluded from the bargaining unit. Based on this holding, we need not address whether some of the GALs should be excluded from the bargaining unit because they are supervisory employees, or whether the GALs should form a separate bargaining unit.

For the foregoing reasons, the order of the Illinois State Labor Relations Board is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

JIGANTI, P.J., and McMORROW, J., concur.