CHIEF JUDGE OF THE SIXTEENTH JUDICIAL CIRCUIT, Petitioner-Appellant, v. THE ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Respondents-Appellees.

Second District    No. 2—95—0287

Opinion filed October 11, 1995.

Joseph M. Gagliardo, Stefanie W. Kohen and Carl S. Tominberg, all of Laner, Muchin, Dombrow, Becker, Levin & Tominberg, of Chicago, for petitioner.

Jacalyn J. Zimmerman, General Counsel, and James E. Ryan, Attorney General, both of Chicago (Barbara A. Preiner, Solicitor General, and Jerald S. Post, Assistant Attorney General, of counsel), for respondent Illinois State Labor Relations Board.

Melissa J. Auerbach, of Cornfield & Feldman, of Chicago, for respondent American Federation of State, County and Municipal Employees, Council 31, AFL-CIO.

JUSTICE HUTCHINSON delivered the opinion of the court:

Respondent, American Federation of State, County and Municipal Employees, Council 31, AFL-CIO (the Union), filed a representation petition pursuant to the Illinois Public Labor Relations Act (the Act) (5 ILCS 315/1 *et seq.* (West 1994)). Respondent brought this petition seeking to represent a bargaining unit of all full-time and part-time Kane County assistant public defenders (assistant public defenders or APDs) employed by petitioner, the Chief Judge of the Sixteenth Judicial Circuit, excluding supervisors, confidential employees, and managerial employees as defined by the Act. See 5 ILCS 315/3(j) (West 1994).

Respondent, Illinois State Labor Relations Board (the Board), conducted a hearing before an administrative law judge (the Judge), on March 23 and 24, 1994. At the hearing, petitioner and the Union stipulated that one of the assistant public defenders, Harris, was a supervisor within the meaning of the Act. The public defender was never part of the petitioned-for unit. The Judge concluded that the assistant public defenders were nonmanagerial employees and, as such, formed an appropriate bargaining unit within the meaning of the Act. (See 5 ILCS 315/3(j) (West 1994).) The Judge recommended that the Union's representation petition be granted and ordered a representation election. Petitioner filed timely exceptions to the Judge's decision. The Board upheld the Judge's decision. A representation election was held among all full-time and part-time assistant public defenders, excluding managerial and confidential employees and Harris as supervisor. The Union won the election. The Board certified the Union as the collective-bargaining representative of all of the attorneys in the office of the Kane County public defender except the public defender and Harris. This petition for review of the Board's order followed.

On review, petitioner alleges: (1) the assistant public defenders are managerial employees within the meaning of the Act and thus are excluded from collective-bargaining as a matter of law; (2) the Board's certification violates public policy because it places the assistant public defenders in a position of divided loyalty; and (3) the Board lacked jurisdiction to certify the Union because the relationship between the public defender and the assistant public defenders is not subject to the Act as a matter of law. We reverse.

No issues are raised on the pleadings. Due to the lengthiness of

the facts in this case, we will address only those facts necessary to our determination of the issues presented in this appeal.

■ An order by the Board certifying a labor organization as the exclusive bargaining representative of employees in the bargaining unit is a final order that is reviewable directly by this court applying the Administrative Review Law (735 ILCS 5/3~101 *et seq.* (West 1994)). (See 5 ILCS 315/9(i) (West 1994).) "[J]udicial review of agency action extends to all questions of law and fact presented in the record." (*City of Evanston v. Illinois State Labor Relations Board* (1992), 227 Ill. App. 3d 955, 968.) On review:

> "[T]he agency's findings and conclusions on questions of fact shall be held *prima facie* true and correct. Where the findings of fact are against the manifest weight of the evidence and it is clearly evident that the Board should have reached the opposite conclusion, a reviewing court may reverse the agency's findings of fact. [Citation.] Where the question involved is one of law, such as the proper interpretation of a statute, the Board's finding is not binding on the court [citations]; however, administrative decisions interpreting the legal effect of statutory language are generally given great weight by the judiciary." *City of Evanston*, 227 Ill. App. 3d at 968.

■ The relevant statutory provision defines a "managerial employee" as "an individual who is engaged predominantly in executive and management functions and is charged with the responsibility of directing the effectuation of management policies and practices." (5 ILCS 315/3(j) (West 1994).) In *City of Evanston*, a two-part test (modeled after the statutory provision) was used to determine managerial status: "First, the employee must be predominantly engaged in executive and management functions. Second, the employee must exercise responsibility for directing the effectuation of management policies and procedures." *City of Evanston*, 227 Ill. App. 3d at 974.

■ The first part of the test requires a careful scrutiny of the employee's executive and management functions. Executive and management functions are those

> "which specifically relate to the running of an agency or department, which may include establishment of policies and procedures, preparation of the budget and the responsibility for assuring that the agency or department operates effectively and efficiently. [Citation.] Executive functions require more than the exercise of professional discretion and technical expertise; an individual must possess and exercise authority and discretion sufficiently to broadly effect a department's goals or means of achieving its goals." (*City of Evanston*, 227 Ill. App. 3d at 974-75.)

An employee is not managerial when his or her role in establishing policy is merely advisory and subordinate, "as it is the final

responsibility and independent authority to establish and effectuate policy that determines managerial status under the Act." *City of Evanston*, 227 Ill. App. 3d at 975.

■ The second part of the test requires a careful scrutiny of the result achieved by the employee's actions. A managerial employee is "an individual [who] directs the effectuation of management policy when he oversees or coordinates policy implementation by developing the means and methods of achieving policy objectives and by determining the extent to which the objectives will be achieved." (*City of Evanston*, 227 Ill. App. 3d at 975.) However, to direct the effectuation of management policy, an individual "must be empowered with a substantial measure of discretion to determine how policies will be effected." *City of Evanston*, 227 Ill. App. 3d at 975.

It has also been stated:

> "Managerial employees are those involved in the direction of the governmental enterprise or a major unit thereof who [possess] authority to broadly affect its mission or fundamental methods. [Citation.] However, an employee need not participate actively in the formulation or effectuation of management's labor relations policies in order to be deemed 'managerial.' [Citation.] In addition, managerial status is not limited to those at the very highest level of the governmental entity, for it is enough if the functions performed by the employee sufficiently align him with management such that the employees 'should not be in a position requiring them to divide their loyalty to the administration *** with their loyalty to an exclusive collective-bargaining representative.' " *Salaried Employees of North America v. Illinois Local Labor Relations Board* (1990), 202 Ill. App. 3d 1013, 1020-21, quoting *Board of Regents of the Regency Universities System v. Illinois Educational Labor Relations Board* (1988), 166 Ill. App. 3d 730, 742-43.

More recently, the supreme court has held that "[t]he authority to make independent decisions and the consequent alignment of the employee's interests with management's are hallmarks of managerial status for purposes of labor law." *Office of the Cook County State's Attorney v. Illinois Local Labor Relations Board* (1995), 166 Ill. 2d 296, 301.

The statute authorizing the positions of public defender and assistant public defenders must be noted. The legislative intent is clearly stated in the initial sentence of Division 3—4 ("Public Defender and Appointed Counsel") of the Counties Code: "The General Assembly recognizes that quality legal representation in criminal and related proceedings is a fundamental right of the people of the State of Illinois and that there should be no distinction in the avail-

ability of quality legal representation based upon a person's inability to pay." (55 ILCS 5/3—4000 (West 1994).) The legislature then created the office of public defender and empowered the appointment of assistant public defenders, as appropriate. "The Public Defender, as directed by the court, shall act as attorney, without fee, before any court within any county for all persons who are held in custody or who are charged with the commission of any criminal offense, and who the court finds are unable to employ counsel." (55 ILCS 5/3—4006 (West 1994).) Furthermore, "[t]he Public Defender *** shall have power to appoint *** assistants, all duly licensed practitioners, *** for the proper discharge of the duties of the office, who shall serve at the pleasure of the Public Defender." (55 ILCS 5/3—4008 (West 1994).) The fact that the assistant public defenders are appointed by the public defender and serve at his or her pleasure, does not preclude them from being deemed "managerial employees" under the Act. See 5 ILCS 315/3(j) (West 1994).

The Board heard testimony for two days. The nature of the assistant public defenders' functions took shape as follows:

1. In those cases which have been delegated to the APDs, the public defender chooses to maintain only minimal involvement.

2. The APDs are fully vested with the legal authority of the public defender and have complete discretion to make all legal decisions on how to handle the cases to which they are assigned.

3. The APDs have no obligation to consult with the public defender about their cases.

4. The then-public defender testified that over 90% of all decision making in the felony division occurs without his knowledge or input.

5. The APDs do not need supervisory approval before entering into plea negotiations or actually entering a plea.

6. The APDs may initiate their own investigations.

7. The public defender reviews closed files to determine the outcome of a case, how it was reached, and to make sure certain paperwork requirements have been met.

8. All full-time and regular part-time attorneys in the public defender's office (a) receive the same fringe benefits; (b) are part of the same vacation plan; (c) are governed by the same sick leave and leave of absence policies; and (d) receive the same health care options.

9. On at least one occasion during the public defender's tenure, an APD has participated in and made recommendations regarding the hiring process.

10. The APDs work out their own case assignments and case coverage on a regular basis.

11. An APD was delegated the authority to select and purchase (in conjunction with data processing) a new $35,000 computer system.

12. The APDs are authorized to make certain expenditures on behalf of the public defender's office without the public defender's prior approval.

13. From time to time, APDs have been asked to do "administrative things" on behalf of the public defender.

■ After a review of the extensive hearing testimony, we determine that the assistant public defenders are managerial employees and, therefore, are not subject to the collective-bargaining provisions of the Act. In making this determination, we rely on several facts: (1) the public defender delegates an overwhelming majority of the decision-making responsibilities to members of his staff; (2) the assistant public defenders, on a day-to-day basis, inherently exercise a great deal of authority and discretion in effectuating and achieving the goals of their office; and (3) the professional interests of the assistant public defenders are fundamentally identical to that of the public defender. "[W]here the professional interests of the employee cannot be separated from those of the employer, the employee is deemed a managerial employee." *Chief Judge v. American Federation of State, County & Municipal Employees, Council 31* (1992), 229 Ill. App. 3d 180, 186.

Respondents argue that the assistant public defenders do not represent the interests of the public defender while they are representing their individual clients. Respondents contend that this is clear from a line of cases that holds an assistant public defender does not have a conflict of interest even where the public defender himself would have such a conflict. (See *People v. Spreitzer* (1988), 123 Ill. 2d 1; see also *People v. Larry* (1990), 196 Ill. App. 3d 231.) Respondents conclude that the case law concerning the nature of the public defender's office is such that an assistant public defender's interests are not so closely bound with those of the public defender that an assistant public defender must be considered a manager *per se*. We find this argument to be unpersuasive.

We agree that the assistant public defenders remain answerable to the public defender and that the public defender is responsible for the professional conduct of his or her assistants. However, we do not believe that these facts, in any way, change the fundamental mission of each attorney in the public defender's office: to represent his or her clients professionally and fairly and to follow the applicable statutory and case law. The unity of the professional interests of the public defender and his or her duly appointed assistants cannot be any clearer.

We conclude that the Board erred when it certified the Union as the exclusive collective-bargaining representative of the assistant public defenders. We should note that this order does not stand for the proposition that all "publicly employed lawyers must necessarily be deemed managerial employees under the Labor Act." (*Cook County State's Attorney*, 166 Ill. 2d at 305.) We hold here only that these assistant public defenders must be so regarded.

Our determination is buttressed by three recent cases that have found certain public sector attorneys to be managerial employees and not subject to the collective-bargaining provisions of the Act. In *Salaried Employees of North America*, 202 Ill. App. 3d at 1022-23, the court found that all law department attorneys employed by the City of Chicago were managerial employees. In making this determination, the court relied heavily on the large amount of discretion and authority the law department attorneys exercised. In *Chief Judge*, 229 Ill. App. 3d at 189, the court found that the guardians *ad litem* in the Cook County public guardian's office were managerial employees. In that case, the court placed great emphasis on the public guardian's delegation of "almost all decision-making responsibilities to members of his staff." (*Chief Judge*, 229 Ill. App. 3d at 182.) Last, in *Cook County State's Attorney*, 166 Ill. 2d at 304, the court determined:

> "Given the close identification of a State's Attorney with the actions of his or her assistants, the unity of their professional interests, and the power of the assistants to act on behalf of the State's Attorney, *** assistant State's Attorneys must, as a matter of law, be regarded as managerial employees as that term is defined in the Illinois Public Labor Relations Act." *Cook County State's Attorney*, 166 Ill. 2d at 304.

As a result of our analysis, we find it unnecessary to address petitioner's arguments that (1) the Board's certification violates public policy because it places the assistant public defenders in a position of divided loyalty; and (2) the Board lacked jurisdiction to certify the Union because the relationship between the public defender and the assistant public defenders is not subject to the Act as a matter of law. Nevertheless, with respect to the first argument, we are compelled to recognize the inherent difficulty these assistant public defenders would have upholding their fiduciary obligation to the public defender if they were forced to divide their loyalty between the public defender and the Union. To illustrate this point, we mention petitioner's statement that, if the public defender is forced to sit across the bargaining table from his assistant public defenders, the public defender would, in effect, be bargaining over the same benefits and conditions of employment to which he himself is subject.

For the foregoing reasons, we reverse the Board's decision to certify the Union as the collective-bargaining representative of all of the attorneys in the office of the Kane County public defender except the public defender and Harris.

Reversed.

BOWMAN and THOMAS, JJ., concur.