THE COUNTY OF COOK, Appellant, v. ILLINOIS LOCAL LABOR
RELATIONS BOARD *et al.*, Appellees

First District (2nd Division)   No. 1—92—1340

Opinion filed August 16, 1994.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Robert G. Toews, Assistant Attorney General, of counsel), for petitioner Illinois Local Labor Relations Board.

Katz, Friedman, Schur & Eagle, of Chicago (Denise S. Poloyac, of counsel), for petitioner General Service Employees Union.

Jack O'Malley, State's Attorney, of Chicago (Karen Covy, Karen Dimond, and John J. Murphy, Assistant State's Attorneys, of counsel), for respondent.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:

General Service Employees Union, Local 73, SEIU, AFL-CIO (the Union), filed an unfair labor practice charge with the Illinois Local Labor Relations Board (the Board), alleging that Cook County (the County) had committed an unfair labor practice in refusing to supply a document related to a matter being grieved through the provisions of the parties' collective bargaining agreement. The Union sought the report prepared by the public safety department of the Oak Forest Hospital (the Hospital) regarding the discharge of a nursing assistant for allegedly stealing money from a patient. The County refused to provide the document, alleging that it was confidential. At the subsequent administrative hearing, the hearing officer issued a recommended decision and order finding that the County had committed an unfair labor practice in failing to supply the report to the Union. The Board adopted the hearing officer's recommendation with modifications and ordered the County to provide the report to the Union. The County petitioned for judicial review of the Board's order, and this court granted the petition. For reasons that follow, we affirm.

Carolyn Stith was employed by Oak Forest Hospital as a patient care attendant from June 18, 1979, until her discharge on August 22, 1990. Her discharge resulted from an allegation that she stole $40 from the gown of a female patient on July 29, 1990. The Hospital's public safety department investigated the alleged theft.

On August 14, 1990, "a pre-disciplinary meeting" was held at the Hospital concerning the theft allegation. A public safety officer, employed by the public safety department, testified that the patient identified Stith as having taken money from her person. The Hospital discharged Stith for cause effective August 22, 1990. She appealed her discharge through the third step of the grievance process of the collective bargaining agreement, at the termination of which, on November 19, 1990, the appeal was denied.

While Stith was employed at the Hospital, she was a member of a local of the Union that represented employees at the Hospital. At the third-step hearing, the Union's business representative, Pia Davis, who represented Stith, requested a copy of the public safety report (PSR) that related to the theft allegations against Stith. Davis made a written request for the PSR the next day. In the past, Davis had used PSR's to uncover information that might not otherwise be revealed during disciplinary hearings, and she had used them to cross-examine witnesses. PSR's had also helped her to decide whether to proceed to arbitration of a grievance. She had not disseminated the reports she had received.

The Hospital refused to give Davis the PSR, because it allegedly contained confidential information and the Hospital was afraid that unauthorized dissemination might result in liability or witness intimidation. The Hospital had unilaterally decided not to provide PSR's to the Union on April 19, 1990, but had not notified the Union of this change in its policies.

The Union filed an unfair labor practice charge with the Board on November 29, 1990, claiming that the Hospital's failure to supply it with the PSR interfered with its ability to represent Stith. The Board issued a complaint on April 11, 1991.

The Union decided to request arbitration of the Stith grievance, as was its right under the collective bargaining agreement. The Hospital was informed of this decision in a letter to the chief administrative officer on December 7, 1990. The parties selected an arbitrator, but on May 29, 1991, the Union requested that the arbitration hearing be continued pending the outcome of the unfair labor practice proceeding. The County objected, but the arbitrator granted the continuance. The arbitration hearing will be resumed only at the completion of this case.

The hearing on the unfair labor practice complaint was held on July 22 and 24, 1991. Davis was called to testify by the Union; and James Lail, associate hospital administrator, and James Brodie, director of public safety at the Hospital, were called by the County.

The hearing officer issued a recommended decision and order finding that the County had committed an unfair labor practice. The hearing officer noted the duties of the parties to a collective bargaining agreement to share relevant information with one another concerning the processing of grievances. The hearing officer determined that the PSR was relevant to the grievance proceeding, stating:

> "[I]t could assist [the Union] in deciding whether to pursue the grievance, and in deciding the manner in which to defend Stith. Under the discovery standard, the Stith report would probably include potentially useful information, which is not clearly irrelevant."

The hearing officer further noted that "a union's interest in even arguably relevant information does not always predominate over all other interests, however legitimate." Applying a balancing standard, the hearing officer then found that the Union's interest in disclosure of the PSR outweighed the County's interest in confidentiality. The hearing officer acknowledged the County's general interests in protecting the confidentiality of its PSR's and in preventing the possible intimidation of witnesses whose statements are recorded or

summarized in the reports. The hearing officer noted, however, that the County had not previously had such a problem when it disseminated the PSR's to the Union prior to Stith's grievance.

The hearing officer concluded that the County could have accommodated the Union's request while protecting its own interests by deleting any verbatim witness statements contained in the reports. It could then have provided the Union with summaries of the deleted verbatim statements. The hearing officer recommended that the Board order the County to provide the Union with the PSR.

The County filed four exceptions to the hearing officer's recommendations and a brief in support on December 13, 1991, and the Union filed its response to the exceptions and a brief in support on January 17, 1992. The Board adopted the recommendations of the hearing officer in an order issued on March 25, 1992. The Board emphasized the duty of the County to seek an accommodation with the Union concerning the Union's right to the information contained in the PSR rather than flatly to refuse to supply the report. The failure to seek such an accommodation was, in itself, an unfair labor practice.

The Board rejected the argument that PSR's are entitled to a blanket exemption because they may contain the investigator's recorded notes of interviews with witnesses. The Board held that investigator's reports must be disclosed absent a particularized showing of an overriding interest in confidentiality. The County had not argued that the report from the Stith investigation should be exempt for any particular reason. The Board also relied on the fact that there had been no instances of witness intimidation when PSR's had previously been released to the Union.

The Board noted that this was not a case where the PSR contained verbatim witness statements or signed witness statements. Rather, the PSR contained the investigator's personal notes as to his conversations with witnesses.

The Board rejected the County's argument that investigative reports should have a blanket exemption from disclosure. Under Federal law, only formal witness statements are entitled to such an exemption. The Board declined to apply such an exemption to investigative reports, or to find that the blanket exemption applied by the National Labor Relations Board for witness statements should be adopted in Illinois. The Board examined the authorities cited by the County and concluded that situations involving disciplinary grievances should be decided on a case-by-case basis.

The County filed a late petition for judicial review on April 27, 1992, along with a motion for leave to file the petition late. This court granted the motion on May 28, 1992.

This court stated the standard of review for examining questions of law arising from judicial review of a decision of the Board as follows:

> "[C]ourts give substantial weight and deference to the interpretation of a statute by the agency charged with the administration and enforcement of that statute. [Citation.] A significant reason for this deference is that courts appreciate that agencies such as the Board can make informed judgments based upon their experience and expertise. [Citation.] Interpretations by administrative agencies express an informed source for ascertaining legislative intent." (*Salaried Employees of North America v. Illinois Local Labor Relations Board* (1990), 202 Ill. App. 3d 1013, 1019-20, 560 N.E.2d 926, 931, *appeal denied* (1991), 136 Ill. 2d 541, 567 N.E.2d 328.)

An administrative agency's interpretation is not binding, however, and will be rejected when it is erroneous as a matter of law. *Board of Trustees of Community College District No. 502 v. Illinois Educational Labor Relations Board* (1993), 241 Ill. App. 3d 914, 917, 608 N.E.2d 950, 952.

■ The parties agree that there is a general duty on both sides of a labor dispute to provide and share relevant information with each other in order for the parties to perform their respective bargaining roles, including the processing of a grievance under a collective bargaining agreement. (See, *e.g., City of Rockford*, 8 Pub. Employee Rep. (Ill.) par. 2014, No. S—CA—91—107 (ISLRB February 28, 1992); *City of Chicago*, 4 Pub. Employee Rep. (Ill.) par. 3025, No. L—CA—88—04 (ISLRB August 25, 1988), *aff'd sub nom. Water Pipe Extension, Bureau of Engineering, Laborer's Local 1092 v. City of Chicago* (1990), 195 Ill. App. 3d 50, 551 N.E.2d 1234; *Chicago Transit Authority,* 4 Pub. Employee Rep. (Ill.) par. 3013, No. L—CA—87—211 (ISLRB May 18, 1988).) However, the general rule of sharing information has exceptions. The Board has adopted a balancing approach for determining whether the interests of the union in being provided information outweigh the legitimate countervailing interests of the employer. In *City of Chicago*, the Board stated that "relevant documents need be turned over only if their necessity to the representative for statutory purposes outweighs the legitimate interests of the employer in controlling access to them." (*City of Chicago*, 4 Pub. Employee Rep. (Ill.) par. 3025, at XI—137.) In *City of Rockford*, the Illinois State Labor Relations Board stated that "[t]he duty of an employer to supply relevant information is dependent on the circumstances of each case." *City of Rockford*, 8 Pub. Employee Rep. (Ill.) par. 2014, at X—81.

This balancing test is a restatement of the law as handed down by the United States Supreme Court. Although even Supreme Court decisions are not binding in Illinois, because they interpret Federal labor law rather than Illinois labor law, Federal court decisions and National Labor Relations Board (NLRB) decisions are often illuminating. In *Detroit Edison Co. v. National Labor Relations Board* (1979), 440 U.S. 301, 59 L. Ed. 2d 333, 99 S. Ct. 1123, the Supreme Court stated:

> "A union's bare assertion that it needs information to process a grievance does not automatically oblige the employer to supply all the information in the manner requested. The duty to supply information *** turns upon 'the circumstances of the particular case' [citation] ***." *Detroit Edison Co.*, 440 U.S. at 314-15, 59 L. Ed. 2d at 346, 99 S. Ct. at 1131.

The claim of confidentiality was upheld in a major NLRB case, *Anheuser-Busch, Inc. & International Brotherhood of Electrical Workers, Local 2295* (1978), 237 N.L.R.B. 982. In that case, an employee was involved in altercations with co-workers. The co-workers and other employee witnesses gave statements to the employer's industrial relations manager concerning their knowledge of the fights. After reviewing the statements, the employer suspended the accused employee; the union filed a grievance and asked for the witness statements, contending that it needed the statements to evaluate the pending grievance and to help determine whether to proceed to arbitration. The employer refused, citing concerns that the individuals who gave statements might be harassed or intimidated. The hearing officer ruled in the union's favor, and the NLRB reversed.

After acknowledging the general duty to share relevant and necessary information, the NLRB stated that in balancing the competing interests at stake, it found that witness statements were fundamentally different from the type of information contemplated by the general duty to share. The NLRB stated:

> "[D]isclosure of witness statements involves critical considerations which do not apply to requests for other types of information. We do not believe that *** the statutory obligation to furnish information may properly be extended so as to require an employer to provide a union with statements obtained during the course of an employer's investigation of employee misconduct." *Anheuser-Busch*, 237 N.L.R.B. at 984.

The *Anheuser-Busch* decision relied upon *National Labor Relations Board v. Robbins Tire & Rubber Co.* (1978), 437 U.S. 214, 57 L. Ed. 2d 159, 98 S. Ct. 2311. The issue before the Supreme Court in

*Robbins Tire & Rubber Co.* was whether the Freedom of Information Act required the NLRB to disclose, prior to an unfair labor practice enforcement hearing, statements of witnesses whom the NLRB intended to call at the hearing. The Supreme Court concluded that the release of the statements would risk interference with the NLRB enforcement hearings. The Court stated:

> "The most obvious risk of 'interference' with enforcement proceedings in this context is that employers or, in some cases, unions will coerce or intimidate employees and others who have given statements, in an effort to make them change their testimony or not testify at all." 437 U.S. at 239, 57 L. Ed. 2d at 176, 98 S. Ct. at 2325.

In *Pennsylvania Power & Light Co. & Local 1600* (N.L.R.B. 1991), 301 N.L.R.B. 1104, the NLRB shed light on the kind of circumstances that can establish an exception to the general rule of sharing information. In that case, the union requested the identity of certain informants and their statements when it learned that information from the informants had led to the dismissal of union members on drug charges. The NLRB held that the employer was justified in refusing to disclose the requested information, stating that the employer's claim that the informants could be subject to harassment was persuasive. *Pennsylvania Power & Light Co.*, 301 N.L.R.B. at 1107.

The NLRB, however, also imposed an obligation on the part of the employer to seek an accommodation for any legitimate confidential information it sought to shield from disclosure. (*Pennsylvania Power & Light Co.*, 301 N.L.R.B. at 1107-08.) Although the employer was not required to reveal the statements or even the names of the informants, it committed an unfair labor practice when it refused to seek an accommodation with the union. The NLRB found that the union was entitled to summaries of witness statements which would help the union determine whether the company had reasonable suspicion to test the employees for drugs. *Pennsylvania Power & Light Co.*, 301 N.L.R.B. at 1107.

In *New Jersey Bell Telephone Co. Local 1022* (1990), 300 N.L.R.B. 42, the NLRB made a distinction between witness statements and investigative reports. Investigative reports, unlike witness statements, are subject to the general requirement of disclosure. (*New Jersey Bell*, 300 N.L.R.B. at 43.) The United States Court of Appeals for the Third Circuit later approved and enforced the NLRB's decision as a proper interpretation of the National Labor Relations Act. *National Labor Relations Board v. New Jersey Bell Telephone Co.* (3d Cir. 1991), 936 F.2d 144, 153.

In the case at bar, the Board stated:

"The Employer has made no effort to demonstrate, with any degree of particularity, any overriding interest to justify its refusal to comply with the Union's request for this information. Rather, the Employer, relying on a decision of the National Labor Relations Board (NLRB), in *Anheuser-Busch, Inc.*, 237 NLRB 982 (1978), contends that its public safety reports may include reports of statements made by witnesses during the investigation and are therefore exempt from disclosure under the Act. We disagree."

The Board determined that, because the PSR did not contain formal witness statements, it was not covered by the *Anheuser-Busch* exemption. According to the Board, the fact that the PSR may contain reports of such statements is not sufficient. Where an investigative report does not contain witness statements, but only an investigator's report of what witnesses stated, "such reports must be disclosed absent a particularized showing by the employer of an overriding need to maintain confidentiality. [Citations.] In this case the Employer has made no effort at such a showing."

Further, the Board expressed its preference that the *Anheuser-Busch* exemption not be adopted in Illinois, although it determined that this issue need not be decided based on the facts of this case. This policy determination is entitled to "substantial weight and deference" because the Board is the "agency charged with the administration and enforcement of" the statute involved. (*Salaried Employees of North America*, 202 Ill. App. 3d at 1019-20.) Nor can the Board's interpretation be said to be erroneous as a matter of law. The question of whether the *Anheuser-Busch* exemption should be adopted in Illinois "is a question of policy uniquely within the expertise of the Board." (*Board of Trustees of Community College District No. 502*, 241 Ill. App. 3d at 917.) Consequently, the informed judgment of the Board on this issue should govern. We decline to state that the *Anheuser-Busch* exemption must be adopted in Illinois.

The County also argues that, contrary to the Board's assertion, the law does not place a burden on the Hospital of making a "particularized showing" that the Union would resort to intimidation tactics if the PSR were released to it. The County cites *Robbins Tire & Rubber Co.* in support of its position. Although the Supreme Court in *Robbins Tire & Rubber Co.* did rule that the NLRB would not be required to make a particularized showing that release of the statements sought in that case would interfere with NLRB proceedings, the County's reliance on *Robbins Tire & Rubber Co.* is misplaced. Despite *Robbins Tire & Rubber Co.*, the Board's adoption of a balancing test and the approval of a case-by-case approach by the

Supreme Court clearly require some sort of showing by the employer that release of allegedly confidential documents will have a negative effect. As the Board correctly pointed out, no such showing was even attempted in this case.

■ Finally, the County's argument that its disclosure of the complaining patient's name to the Union represented an attempt to accommodate the Union's interest is simply not persuasive. The question is not so much what the patient said, since the patient did not testify at the predisciplinary meeting, but what the investigating officer, who did testify, put into the PSR. The information requested must be made available in a useful format (*New Jersey Bell Telephone Co.*, 936 F.2d at 150), and the name of the complaining patient alone was not useful in this context.

In summary, the County had a duty to disclose the PSR and failed to do so. The report did not come under an exemption for disclosure, and the County offered no basis for finding that the need to maintain the confidentiality of this particular report outweighed the Union's need for disclosure. The County did not attempt to accommodate the Union's interest. The Board's order finding that the County committed an unfair labor practice, and ordering the County to give a copy of the PSR to the Union, is therefore affirmed.

Affirmed.

HARTMAN and SCARIANO, JJ., concur.