CHICAGO TEACHERS UNION, IFT/AFT, AFL-CIO, *et al.*, Petitioners-Appellants, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD, Respondent-Appellee (Chicago Board of Education, City of Chicago District No. 299, Respondent-Appellee and Cross-Appellant).

First District (3rd Division)    No. 1—96—3551

Opinion filed May 27, 1998.

786

Lawrence A. Poltrock, Gregory N. Freerksen, and Michael J. Merrick, all of Witwer, Poltrock & Giampietro, of Chicago, for petitioners.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Karen J. Dimond, Assistant Attorney General, of counsel), for respondent Illinois Educational Labor Relations Board.

Andrea R. Waintroob and Sally J. Scott, both of Franczek, Sullivan, Mann, Crement, Hein & Relias, P.C., of Chicago, for respondent Chicago Board of Education.

JUSTICE CAHILL delivered the opinion of the court:

Public Act 89—15 added a section to article 34 of the Illinois School Code effective May 30, 1995. See 105 ILCS 5/34—8.1b (West 1996). The section, in effect, bars Chicago public school assistant principals from membership in the teachers' collective bargaining

unit. The collective bargaining agreement signed by the Chicago Board of Education and the Chicago Teachers Union (the Union) took effect September 1, 1995, and included assistant principals as members of the bargaining unit.

The Union filed a unit clarification petition and a representation petition with the Illinois Educational Labor Relations Board (IELRB). Both petitions sought to have the Chicago Teachers Union declared the collective bargaining representative for assistant principals employed by the Chicago Board of Education (Board of Education). The administrative law judge (ALJ) dismissed the petitions. The ALJ found that assistant principals were managerial employees and so ineligible for membership in the teachers' union. The ALJ did not rely on section 34—8.1b of the School Code to reach his decision. Instead, he made an independent finding that assistant principals are "managerial employees" based on IELRB interpretations of section 2(o) of the Educational Labor Relations Act (115 ILCS 5/2(o) (West 1996)). The IELRB affirmed the ALJ's recommended decision and order.

The Union appealed directly to this court under section 16 of the Educational Labor Relations Act (115 ILCS 5/16 (West 1996)). The Union makes five arguments on appeal. The first three address the impact of section 34—8.1b on the case, while the last two address the findings of the ALJ independent of section 34—8.1b: (1) the recently enacted section 34—8.1b of the School Code (105 ILCS 5/34—8.1b (West 1996))—which prohibits Chicago assistant principals from belonging to the teachers' collective bargaining unit—is unconstitutional local legislation under article IV, section 13, of the Illinois Constitution (Ill. Const. 1970, art. IV, § 13); (2) section 34—8.1b is an unconstitutional infringement on the assistant principals' freedom of association under the first amendment of the United States Constitution (U.S. Const., amend. I); (3) section 34—8.1b violates the principle of separation of powers under article IV, section 1, of the Illinois Constitution (Ill. Const. 1970, art. IV, § 1); (4) assistant principals should be recognized by the IELRB as a separate unit covered by the existing contract; and (5) the IELRB erred in finding that assistant principals are managerial employees under section 2(o) of the Educational Labor Relations Act (115 ILCS 5/2(o) (West 1996)).

The Board of Education filed a cross-appeal and argued: (1) the IELRB erred in finding that assistant principals are not supervisors under section 2(g) of the Educational Labor Relations Act; and (2) the IELRB erred in finding that former assistant principals who are now full-time teachers, but bear the title "assistant principal" and receive assistant principal stipends, could remain in the teachers' bargaining unit. Because we agree that the IELRB is empowered to decide

whether assistant principals are managerial employees, we do not reach the issues the Union raises about the validity of the statute. The Board found independent reasons to declare assistant principals ineligible for teacher union membership.

The ALJ heard testimony that revealed that from 1967 to 1995, the Union was the exclusive representative of a bargaining unit that included full-time teachers, assistant principals, and other Board of Education employees. The Board of Education has about 44,000 employees, 40,000 of whom are teachers. The parties disagree about the number of assistant principal positions. The Union's petitions suggest that an assistant principals' unit would consist of 532 members. The Board of Education's records, on the other hand, show 701 such positions.

The Board of Education's current job description for assistant principals reads:

> "Assistant Principals shall take charge of their respective schools when their principals *** are absent from the building for any reason. Assistant Principals shall be subject to the supervision of the principal *** and shall perform such duties the principal *** may direct. Such duties may include, but are not limited to, providing assistance in the organization, supervision, administration, and discipline of the schools. In the event there are multiple Assistant Principals in a school and the principal *** [is] absent, the principal shall designate which Assistant Principal shall be in charge."

Principals select assistant principals and set their work schedules and duties. When a principal resigns, retires or is discharged, the new principal may select new assistant principals. Assistant principals selected by an earlier principal lose their positions if not selected by the new principal.

The ALJ heard testimony from a number of principals and assistant principals. The testimony reveals that the duties of assistant principals vary from school to school. Some assistant principals teach full-time, with no other duties. Others have disciplinary responsibilities in addition to teaching. Still others are given only nonteaching duties. These include monitoring student attendance and tardiness, monitoring lunchrooms, observing and evaluating teachers, enforcing discipline procedures, interviewing prospective teachers, coordinating curriculum, managing budgets, administering specific programs, and overseeing school operations when the principal is absent.

After hearing the testimony, the ALJ dismissed the unit clarification petition. The ALJ held that he did not have authority to rule on the constitutional challenges to section 34—8.1(b) of the School Code.

Since the Union's constitutional challenges to the statute were the only predicate for a unit clarification petition, there were no grounds in the petition the ALJ could address.

The ALJ then addressed the representation petition. The ALJ determined that assistant principals are not "supervisors" within the meaning of section 2(g) of the Educational Labor Relations Act, but are "managerial employees" under section 2(o). The ALJ reasoned that assistant principals are not supervisors because they do not have the authority to hire, discharge, reward or punish teachers. But assistant principals are managerial employees because the primary role of the assistant principal is that of a qualified executive employee who assists the principal in running the school. He further reasoned that since assistant principals serve only as long as the principal who appointed them, their interests are aligned with those of management.

Both the Union and the Board of Education filed exceptions to the ALJ's decision. The IELRB affirmed most of the ALJ's findings. The Board differed only in ruling that employees who hold the title of assistant principal, but who in fact teach full-time with no managerial duties, are not managerial employees. The IELRB found that these employees are not excluded from the teachers' union by the language of the new section 34—8.1b of the School Code because neither their job description nor their actual duties requires a "Type 75 General Administrative Certificate."

■ The IELRB argues on appeal that we need not address the constitutional challenges to section 34—8.1b raised by the Union. Constitutional questions will not be considered if a case can be disposed of on other grounds. *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445, 99 L. Ed. 2d 534, 544, 108 S. Ct. 1319, 1323 (1988); *In re Estate of Longeway*, 133 Ill. 2d 33, 44, 549 N.E.2d 292 (1990). The IELRB argues that if we affirm the decision that assistant principals are managerial employees, then the Board of Education is not required to bargain with them under the Act without regard to section 34—8.1b of the School Code. The Union does not address this argument.

■ We can avoid the constitutional question only if the IELRB had the authority to review whether assistant principals are managerial employees without regard to the issues raised in the Union's petition based on section 34—8.1b of the School Code. We noted earlier that assistant principals are included in the collective bargaining agreement effective from September 1, 1995, through August 31, 1999. The statute that prohibits their membership took effect three months earlier. While the constitutionality of the statute would come

into play if the IELRB had relied upon it, nothing prohibits the IELRB from reaching the separate question of whether assistant principals are managerial employees, so long as the finding does not conflict with the statute. The IELRB has interpreted its rules and regulations to permit review of an employer challenge to employee status even during the term of a collective bargaining agreement. See *Lockport Township High School District 205*, 8 Pub. Employee Rep. (Ill.) par. 1068, No. 92—UC—0003—C (IELRB June 29, 1992); *Rock Island School District*, 2 Pub. Employee Rep. (Ill.) par. 1060, Nos. 85—UC—0010—C, 85—UC—0011—C (IELRB April 21, 1986). The Union does not challenge this power. So we agree with the IELRB that, even absent the Union's petition based on section 34—8.1b, the IELRB had jurisdiction to address the Board of Education's challenge to the status of assistant principals. Because we affirm the IELRB's decision that assistant principals are managerial employees—an issue within the scope of the IELRB's powers—we need not address the constitutional issues raised by the Union, challenging the statute.

The Union next argues that, even if the IELRB has the power to decide if assistant principals are managerial employees, the IELRB erred in finding that assistant principals are managerial employees under IELRB precedents and the Educational Labor Relations Act. The Union maintains that the work of assistant principals, as a whole, is not managerial. In the alternative, the Union argues the IELRB erred in concluding that the Board of Education met its burden of proving that *all* non-full-time teaching assistant principals are excluded from the bargaining unit as "managerial employees." The Union suggests that each assistant principal must be given a separate hearing because the duties of assistant principals vary.

We will not reverse the findings of the IELRB unless they are against the manifest weight of the evidence. *Board of Education of Plainfield Community Consolidated School District No. 202 v. Illinois Educational Labor Relations Board*, 143 Ill. App. 3d 898, 906, 493 N.E.2d 1130 (1986). Although we are not bound by the IELRB's interpretation of the Educational Labor Relations Act, we give weight and deference to the interpretation of a statute by the agency charged with its administration and enforcement. *Airey v. Department of Revenue*, 116 Ill. 2d 528, 536, 508 N.E.2d 1058 (1987); *Board of Education of Community Consolidated High School District No. 230 v. Illinois Educational Labor Relations Board*, 165 Ill. App. 3d 41, 55, 518 N.E.2d 713 (1987). Deference is appropriate where, as here, the agency brings unique experience and expertise to the issue. *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n*, 95 Ill. 2d 142, 153, 447 N.E.2d 295 (1983).

■ Section 3 of the Educational Labor Relations Act gives "educational employees" the right to organize for purposes of collective bargaining with educational employers. 115 ILCS 5/3 (West 1996). Section 2(b) excludes from the definition of "educational employee" those who are "supervisors, managerial, confidential, short term employees, student, and part-time academic employees of community colleges." 115 ILCS 5/2(b) (West 1996). Exclusion of managerial employees maintains a distinction between management and labor and provides employers undivided loyalty from their representatives in management. *Chief Judge of the Sixteenth Circuit v. Illinois State Labor Relations Board,* 178 Ill. 2d 333, 339, 687 N.E.2d 795 (1997), citing *National Labor Relations Board v. Yeshiva University,* 444 U.S. 672, 682, 63 L. Ed. 2d 115, 125, 100 S. Ct. 856, 862 (1980).

■ Section 2(o) of the Illinois Educational Labor Relations Act defines "managerial employee" as:

> "an individual who is engaged predominately in executive and management functions and is charged with the responsibility of directing the effectuation of such management policies and practices." 115 ILCS 5/2(o) (West 1996).

The Act does not define "executive and management functions." But several Illinois cases interpret and apply either section 2(o) of the Educational Labor Relations Act or the identical definition of "managerial employee" in section 3(j) of the Illinois Public Labor Relations Act (5 ILCS 315/3(j) (West 1996)). See *Office of the Cook County State's Attorney v. Illinois Local Labor Relations Board,* 166 Ill. 2d 296, 652 N.E.2d 301 (1995); *Salaried Employees of North America v. Illinois Local Labor Relations Board,* 202 Ill. App. 3d 1013, 560 N.E.2d 926 (1990); *Board of Regents of the Regency Universities System v. Illinois Educational Labor Relations Board,* 166 Ill. App. 3d 730, 520 N.E.2d 1150 (1988).

The Union's argument that assistant principals are not managerial employees relies primarily on facts that distinguish this case from *Cook County State's Attorney,* 166 Ill. 2d 296, 652 N.E.2d 301. In *Cook County State's Attorney,* our supreme court held that assistant State's Attorneys are "managerial employees" within the meaning of the Illinois Public Labor Relations Act. The Union notes that in *Cook County State's Attorney* the court found that assistant State's Attorneys are "surrogates" of the State's Attorney—acts of assistants are regarded as acts of the State's Attorney himself. See *Cook County State's Attorney,* 166 Ill. 2d at 303. The Union emphasizes that the State's Attorney's statutory duties are "in almost every instance performed by an assistant who prosecutes or otherwise handles a case according to his independent professional judgment." The Union

argues that *Cook County State's Attorney* is distinguishable because assistant principals are not "surrogates" of school principals, but are merely "helpers" or "aides."

The term "surrogate" as used by the court in *Cook County State's Attorney* emphasized the high level of alignment of assistant State's Attorneys' duties and interests with those of management. We agree that the duties of assistant principals and principals are not so interchangeable that assistant principals can be considered "surrogates" of principals. But *Cook County State's Attorney* does not suggest that to be considered a "managerial employee" an employee's only duties must be to carry out the responsibilities of management.

In *Cook County State's Attorney*, our supreme court held that "[t]he authority to make independent decisions and the consequent alignment of the employee's interests with management's are hallmarks of managerial status for purposes of labor law." 166 Ill. 2d at 301.

The court reasoned:

> " '[M]anagerial status is not limited to those at the very highest level of the governmental entity, for it is enough if the functions performed by the employee sufficiently align him with management such that the employees "should not be in a position requiring them to divide their loyalty to the administration *** with their loyalty to an exclusive collective-bargaining representative." ' " *Cook County State's Attorney*, 166 Ill. 2d at 301-02, quoting *Salaried Employees*, 202 Ill. App. 3d at 1021, quoting *Board of Regents*, 166 Ill. App. 3d at 742-43.

The court found that the assistant State's Attorney's duties under statute and case law made them "managerial" because of three features of the assistant State's Attorney position: (1) close identification of a State's Attorney with the actions of assistants; (2) unity of professional interests; and (3) power of assistants to act on behalf of the State's Attorney. *Cook County State's Attorney*, 166 Ill. 2d at 304.

The IELRB relied on similar aspects of the assistant principal position in finding that assistant principals are managerial employees. The IELRB found that "the primary purpose of assistant principals, the specific duties assigned to assistant principals, and the fact that assistant principals serve at the will of the principal, lead inescapably to the conclusion that the assistant principals are responsible for directing [Board of Education] policies and practices in their individual schools, and that the professional interests of assistant principals cannot be separated from those of their principals." See *Chicago Board of Education*, 12 Pub. Employee Rep. (Ill.) par. 1089, Nos. 96—RC—0006—C, 96—UC—0004—C, at IX—371 (IELRB September 17, 1996).

The role of an assistant principal is not sharply defined. Rather, the role is a flexible one that allows principals to assign duties to assistant principals where their help is needed most. As the IELRB noted, although their duties vary, all assistant principals are "bearing responsibility for a number of disparate, unrelated tasks, for the fundamental, overriding purpose of the successful operation of a school." *Chicago Board of Education*, 12 Pub. Employee Rep. (Ill.) par. 1089, Nos. 96—RC—0006—C, 96—UC—0004—C, at IX—371 (IELRB September 17, 1996). The IELRB's conclusion did not depend on a quantitative analysis of how much time each assistant principal devoted to executive functions.

We note that the managerial work of assistant principals need not take up most of their time to be considered "predominant" work under section 2(o). The "predominant" character of executive and management work is determined not only by the amount of time the employee spends on managerial functions, but also by considering whether these functions are "uppermost in importance and influence." *Southern Illinois University Board of Trustees*, 5 Pub. Employee Rep. (Ill.) par. 1197, Nos. 85—RC—0022—S, 85—RC—0027—S, 85—RC—0030—S, 85—RC—0031—S, 85—RC—0032—S, 85—RC—0033—S, 85—RC—0035—S, 86—RC—0011—S, at IX—530 (IELRB September 30, 1988). In *Board of Regents*, the court found that directors of "public affairs centers" at Sangamon State University were managerial employees under the Educational Labor Relations Act even though they also held half-time faculty positions. *Board of Regents*, 166 Ill. App. 3d at 743.

The varied duties assigned to assistant principals preclude us from relying on individual duties alone in deciding whether assistant principals as a whole are managerial employees. The managerial nature of the assistant principal role is determined not only by the tasks performed, but by what assistant principals stand ready to do: whatever administrative work the principal assigns.

■ We agree with the ALJ's finding that "[t]he primary reason for the existence of the assistant principal position is to provide each of the [Board of Education's] schools with an additional qualified executive whom the principal can entrust with the overflow from the myriad of tasks, requiring discretion and independent judgment, that confront principals in running the schools." *Chicago Board of Education*, 12 Pub. Employee Rep. (Ill.) par. 1034, Nos. 96—RC—0006—C, 96—UC—0004—C, at VI—115 (IELRB February 29, 1996). Assistant principals are like the assistant State's Attorneys in that both assist management in carrying out managerial functions. This responsibility "closely aligns" assistant principals with management in the

same way assistant State's Attorneys are aligned with management. The IELRB's conclusion that assistant principals are "managerial employees" is not against the manifest weight of the evidence.

Because the IELRB relied on all characteristics of the assistant principal position, not just individual duties, we reject the Union's argument that "whether a particular assistant principal is a 'manager' might well require a hearing with respect to each particular [assistant principal]." All assistant principals who engage in nonteaching managerial tasks assigned by principals are aligned with management and "should not be *** [required] to divide their loyalty to [management] with their loyalty to an exclusive collective-bargaining representative." *Board of Regents*, 166 Ill. App. 3d at 743.

We next address the Board of Education's argument that the IELRB erred in finding that employees who teach full-time, but carry the title of "assistant principal" and continue to receive the same stipend as other assistant principals, are not managerial employees or excluded from the teachers' bargaining unit under section 34—8.1b of the School Code.

The defining characteristic of managerial employees is the authority to make independent managerial decisions. See *Cook County State's Attorney*, 166 Ill. 2d at 301. Where an assistant principal is assigned the same duties as a teacher, and has not been assigned managerial tasks, that employee is not authorized to engage in managerial functions or assist the principal in a way that aligns professional interests. The IELRB did not err in finding that such employees are not managerial employees. Why the Board of Education continues to pay and recognize employees with no managerial functions as "assistant principals" cannot be gleaned from this record. That some full-time teachers continue to get assistant principal stipends is a policy issue for the Board of Education, not the IELRB. Salary is not a determining factor under the Educational Labor Relations Act's definition of "managerial employee."

We further note that full-time teachers are not excluded by statute from the teachers' bargaining unit under section 34—8.1b of the School Code. Section 34—8.1(b) of the School Code requires:

> "[A]ny employee of the Chicago public schools system whose job description or actual performance of duties requires an Illinois Type 75 General Administrative Certificate or its equivalent shall not be a member of the teachers collective bargaining unit." 105 ILCS 5/34—8.1b (West 1996).

Assistant principals who are, in fact, full-time teachers do not need "Type 75 General Administrative Certificates" to perform teaching duties. And the job description for Chicago assistant principals does not require a "Type 75 General Administrative Certificate."

We also find unavailing the Board of Education's argument that "assistant principals" who are full-time teachers are "managers" or need "Type 75" certificates for their jobs because they could be called upon, under the Board's job description, to run the operations of the school in the principal's absence. We acknowledge that a principal could appoint these employees to oversee operations of the school in her absence, in effect placing that employee in the managerial class of assistant principals. But the IELRB did not abuse its discretion in holding that the possibility that assistant principals who teach full-time might be called upon one day to exercise such responsibilities is not sufficient to find that they are predominantly engaged in managerial tasks, are closely aligned with management, or that their duties require "Type 75" certificates.

The IELRB has made clear two things: (1) the definition of a managerial employee, and (2) whatever an employee might be called, a full-time teacher with no other duties may be a member of the Union.

Affirmed.

LEAVITT, P.J., and COUSINS, J., concur.